UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH J. MEZYK, MARY P. MULQUEENY, DORIS L. CARTHY, PEGGY B. RAYMOND, and SHIRLEY CHATMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANK PENSION PLAN and U.S. BANCORP, INC.,<br><br>Defendants. | Case No. 3:09-cv-384-JPG |

## COMPLAINT

COME NOW, Plaintiffs, Joseph J. Mezyk, Mary P. Mulqueeny, Doris L. Carthy, Peggy B. Raymond, and Shirley Chatman, individually and on behalf of all others similarly situated and for their Complaint against Defendants, U.S Bank Pension Plan and U.S. Bancorp, Inc., and state as follows:

### The Parties

1. Plaintiff Joseph Mezyk is a citizen of the United States who resides in Swansea, Illinois, and is a "participant" in the U.S. Bank Pension Plan within the meaning of the Employee Retirement Income Security Act ("ERISA") § 3(7), 29 U.S.C. § 1002(7).

2. Plaintiff Mary Mulqueeny is a citizen of the United States who resides in Belleville, Illinois, and is a "participant" in the U.S. Bank Pension Plan within the

1

meaning of the Employee Retirement Income Security Act ("ERISA") § 3(7), 29 U.S.C. § 1002(7).

3. Plaintiff Doris Carthy is a citizen of the United States who resides in Belleville, Illinois, and is a "participant" in the U.S. Bank Pension Plan within the meaning of the Employee Retirement Income Security Act ("ERISA") § 3(7), 29 U.S.C. § 1002(7).

4. Plaintiff Peggy Raymond is a citizen of the United States who resides in Granite City, Illinois, and is a "participant" in the U.S. Bank Pension Plan within the meaning of the Employee Retirement Income Security Act ("ERISA") § 3(7), 29 U.S.C. § 1002(7).

5. Plaintiff Shirley Chatman is a citizen of the United States who resides in Caseyville, Illinois, and is a "participant" in the U.S. Bank Pension Plan within the meaning of the Employee Retirement Income Security Act ("ERISA") § 3(7), 29 U.S.C. § 1002(7).

6. Defendant U.S. Bank Pension Plan (the "Plan") is and at all times relevant to this Complaint was a "defined benefit plan" within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35), and is the successor in interest to the Firstar Employees' Pension Plan which was the successor in interest to the Mercantile Bancorporation Inc. Retirement Plan.

7. Defendant U.S. Bancorp Inc. ("U.S. Bank") is and at all times relevant to this Complaint was a Delaware corporation registered to do business in Illinois and doing business in this judicial District, and is the "Plan Sponsor" of the U.S. Bank Pension Plan within the meaning of ERISA § 3(16), 29 U.S.C. § 1002(16).

## Jurisdiction and Venue

8. This is a civil enforcement action brought pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a). This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

9. Venue is proper in this judicial District pursuant to ERISA § 502(e)(2), 29 U.S.C. §1132(e)(2), in that the breach upon which the suit is premised occurred in this judicial District, damages occurred directly to Plaintiffs in this judicial District and/or because one or more of the Defendants may be found doing business in this judicial District.

## Nature of the Action

10. In Count I, Plaintiffs and the Class seek injunctive relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), in the form of a declaration that Defendants' method of computing their Opening Balance Credits violated ERISA's anti-cutback rule, ERISA § 204(g), 29 U.S.C. § 1054(g), and a court order requiring the Plan to recalculate their Opening Balance Credits and subsequent pension benefits in accordance with the requirements of ERISA.

11. In Count II, Plaintiffs and the Class seek injunctive relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), in the form of a declaration that Defendants' method of computing their Opening Balance Credits violated ERISA's prohibition against reducing a benefit as the result of attaining any age, ERISA § 204(b)(1)(H), 29 U.S.C. § 1054(b)(1)(H), and a court order requiring the Plan to recalculate their Opening Balance Credits and subsequent pension benefits in accordance with the requirements of ERISA.

12. Alternatively, in Count III Plaintiffs and the Class seek injunctive relief against Defendants pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), in the form of a declaration that the purported amendment to the Plan purportedly effective on January 1, 1999, is ineffective, invalid, and void *ab initio* because of defective and insufficient notice in violation of ERISA § 204(h), 29 U.S.C. § 1054(h).

13. Incidental to the injunctive relief sought in Counts I, II and III pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and mechanically flowing from that injunctive relief, Plaintiffs and the Class also seek a court order requiring the Plan to create a common fund from which Defendants are ordered to make a retroactive payment of pension benefits to Plaintiffs and the Class in an amount equal to the difference between what Plaintiffs and Class members were paid under the unlawful method of computing their pension benefits and what the court-ordered recalculation of pension benefits shows they should have been paid.

14. Alternatively, in Count IV Plaintiff and the Class seek a judgment pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), against the respective Plans for the unlawful computation of their pension benefits in violation of ERISA and seek damages in the form of a common fund to recover pension benefits due them based upon a lawful computation of their pension benefits.

## General Allegations of Fact

15. Mercantile Bancorporation ("Mercantile Bank") hired Plaintiff Peggy Raymond on October 30, 1956.

16. Mercantile Bank hired Plaintiff Shirley Chatman on April 27, 1957.

17. Mercantile Bank hired Plaintiff Doris Carthy on September 4, 1962.

18. Mercantile Bank hired Plaintiff Mary Mulqueeny on April 1, 1968.

19. Mercantile Bank hired Plaintiff Joseph Mezyk on February 13, 1974.

20. Mercantile Bank established and sponsored the Mercantile Bancorporation Inc. Retirement Plan (the "Mercantile Plan") effective January 1, 1981, as a traditional final average pay defined benefit pension plan.

21. Between January 1, 1981, and December 31, 1998, the Mercantile Plan provided a monthly pension benefit to its participants at normal retirement age based upon a formula that took into account either a specified dollar amount per years of service or a specified percentage of a participant's salary in the final year or years of his employment known as a traditional final average pay defined benefit plan.

22. Mercantile Bank purportedly amended the Mercantile Plan effective on December 31, 1998, and converted it from a traditional final average pay defined benefit plan to a cash balance defined benefit plan.

23. The Mercantile Plan provided that effective on January 1, 1999, each participant's Cash Balance Account was to be credited with an Opening Balance Credit in a notional lump sum equal to the actuarial present value of the participant's benefit accrued through December 31, 1998, under the Predecessor Mercantile Plan.

24. In order to calculate the actuarial present cash value of each plan participant's accrued benefit under the Predecessor Mercantile Plan as of December 31, 1998, ERISA required Defendants to project the accrued benefit out to normal retirement age and then reduce that benefit to present cash value—a process known as a whipsaw calculation.

25. Under the terms of the Mercantile Plan, the normal retirement age was 65.

26. For participants age 45 and older on December 31, 1998, Defendants calculated each participant's Opening Balance Credit by projecting the accrued benefit to normal retirement age using the statutory interest rate set out in ERISA § 417(e)(3), 26 U.S.C. 417(e)(3), which was 5.05% per annum on January 1, 1999, and reducing the benefit back to present cash value using a discount rate of 8% per annum.

27. For participants under age 45 on December 31, 1998, Defendants calculated each participant's Opening Balance Credit by projecting the accrued benefit to normal retirement age using the statutory interest rate set out in ERISA § 417(e)(3), 26 U.S.C. 417(e)(3), which was 5.05% per annum on January 1, 1999, and reducing the benefit back to present cash value using a discount rate of 7% per annum.

28. On January 1, 1999, the Mercantile Plan credited each participant's account with a lump sum determined by a whipsaw calculation to a present cash value using either the 8% or 7% discount rate, depending on the participant's age.

29. Defendants did not inform Plaintiffs or participants of the interest rates or discount rates employed in the whipsaw calculation to determine the Opening Balance Credits in either the summary plan description or benefit statement materials distributed at or after the conversion date.

30. Firstar Corporation ("Firstar") bought Mercantile Bank on September 20, 1999.

31. On December 31, 1999, the Mercantile Plan was merged into the Firstar Employee Pension Plan (the "Firstar Plan"). The cash balance benefit formula for former Mercantile Bank employees, including Plaintiffs, remained unchanged after the pension plan merger.

32. Firstar bought the majority of stock of U.S. Bancorp ("U.S. Bank") on February 27, 2001, and U.S. Bancorp was the surviving entity of the merger.

33. The Firstar Plan (including the cash balance benefit formula for former Mercantile Plan participants) was merged into the U.S. Bancorp Pension Plan effective January 1, 2002. The U.S. Bancorp Pension Plan later changed its name to the U.S. Bank Pension Plan, the name of the surviving entity today.

34. Plaintiff Joseph Mezyk terminated his employment with Mercantile Bank on or about September 15, 2000, and took his pension benefit from the Mercantile Plan in the form of a single lump sum.

35. Plaintiff Mary Mulqueeny terminated her employment with Mercantile Bank on or about December 31, 2002, and took her pension benefit from the Mercantile Plan in the form of a single lump sum.

36. Plaintiff Doris Carthy terminated her employment with Mercantile Bank on or about September 15, 2001, and took her pension benefit from the Mercantile Plan in the form of an annuity.

37. Plaintiff Peggy Raymond terminated her employment with Mercantile Bank on or about October 31, 2000, and took her pension benefit from the Mercantile Plan in the form of an annuity.

38. Plaintiff Shirley Chatman terminated her employment with Mercantile Bank on or about June 28, 2000, and took her pension benefit from the Mercantile Plan in the form of an annuity.

**Class Action Allegations**

39. Plaintiffs request that this Court certify the following Class:

> All current and vested former U.S. Bank Pension Plan participants, and their beneficiaries, who accrued benefits prior to September 1, 1998, and who had active Cash Balance Accounts on and after September 1, 1998.

40. The Class can be identified by objective criteria in records maintained by Defendants.

41. Certification of this class is appropriate pursuant to Rule 23(a)(1), Fed. R. Civ. P. 23(a)(1), because the Class is comprised of hundreds of current and former Plan participants and is thus so numerous that joinder of all Class members would be impracticable.

42. Certification of this class is appropriate pursuant to Rule 23(a)(2), Fed. R. Civ. P. 23(a)(2), because there are common questions of law and fact which predominate, including, among others:

> i. Whether Defendants' method of calculating Plaintiffs' and the Class members' Opening Balance Credit violated ERISA's anti-cutback rule, ERISA § 204(g), 29 U.S.C. § 1054(g);
>
> ii. Whether Defendants' method of calculating Plaintiffs' and the Class members' Opening Balance Credit violated ERISA's prohibition against reducing a benefit as the result of attaining any age, ERISA § 204(b)(1)(H), 29 U.S.C. § 1054(b)(1)(H);

8

    iii.    Whether Defendants violated ERISA § 204(h) by failing to provide Plaintiffs and Class members with a written notice setting forth the purported amendment purportedly effective January 1, 1999;

    iv.    Whether Plaintiff and the Class members are entitled to injunctive relief pursuant to ERISA § 502(a)(3);

    v.    Whether the purported amendment purportedly effective January 1, 1999, is ineffective, invalid, and void *ab initio*;

    vi.    Whether Plaintiffs and the Class members are entitled to incidental damages which may flow from the injunctive relief in the form of recalculated benefits; and/or

    vii.    Whether Plaintiff and Class members are entitled to recover damages in the form of additional benefits under the terms of the Plan pursuant ERISA § 502(a)(1)(B).

43. Certification of this Class is appropriate pursuant to Rule 23(a)(3), Fed. R. Civ. P. 23(a)(3), because Plaintiffs' claims are typical of those of the Class regarding whether Defendants properly calculated Plaintiffs' and the Class members' Opening Balance Credits and pension benefits in accordance with ERISA is a uniform practice applied to all members of the Class. Plaintiffs' claims are also typical of those of the Class because Defendants failed to notify Plaintiffs and the Class members of the purported amendment purportedly effective January 1, 1999, in accordance with the requirements of ERISA.

44. Certification of this Class is appropriate pursuant to Rule 23(a)(4), Fed. R. Civ. P. 23(a)(4), because Plaintiffs will fairly and adequately represent the interests of the

members of the Class. Plaintiffs understand the basic issues in the case. Their interests are the same as, and not in conflict with, the interests of other members of the Class. Plaintiffs' counsel is experienced in and competent to handle class actions and complex litigation of this type.

45. Certification of this Class is appropriate pursuant to Rule 23(b)(1), Fed. R. Civ. P. 23(b)(1), because there is a risk that the prosecution of separate actions would establish incompatible standards of conduct for Defendants regarding the proper computation of pension benefits for all similarly situated participants.

46. Certification of this Class is also appropriate pursuant to Rule 23(b)(2), Fed. R. Civ. P. 23(b)(2), because Defendants have miscalculated and continue to miscalculate the pension benefits of Plaintiff and all similarly situated participants using the same methodology contested here; and therefore, Defendants acted or refused to act on grounds generally applicable to the Class making appropriate final injunctive relief or declaratory relief with respect to the Class as a whole.

47. Certification of this class is also appropriate under Rule 23(b)(3), Fed. R. Civ. P. 23(b)(3), because a class action is superior to other available litigation methods for the fair and efficient adjudication of this controversy, as joinder of all Class members is impracticable. Furthermore, many Class members injured by Defendants' conduct will not be compensated for their injuries in the absence of a class action since it is too expensive for many individual members to prosecute this litigation. Even if individual Class members could afford to prosecute this litigation alone, individual litigation magnifies the delay and expense to all parties and to the court system of resolving the controversies engendered by the Defendants' actions. By contrast, a class action presents

fewer management difficulties and provides the benefits of unitary adjudication, economies of scale and comprehensive supervision by a single court.

## COUNT I

### (Violation of ERISA § 204(g) Anti-Cutback Rule)

48. Plaintiffs incorporate by reference the allegations of paragraphs 1-47 above in this Count.

49. ERISA § 204(g) provides that a participant's accrued benefit under a plan may not be decreased by an amendment of the plan. 29 U.S.C. § 1054(g).

50. Section 4.2 of the Mercantile Plan provided that each participant's Cash Balance Account was to be credited with an Opening Balance Credit in a lump sum equal to the actuarial present value of the participant's benefit accrued under the Predecessor Mercantile Plan.

51. ERISA requires that any lump sum calculation of a participant's accrued pension benefit must be the actuarial equivalent of the participant's normal retirement benefit in the form of an annuity commencing at normal retirement age (typically age 65). ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3); 26 U.S.C. § 411(c)(3); 26 C.F.R. § 1.411(c)-1(e); IRC Notice 96-8.

52. For participants age 45 and older on September 1, 1998, Defendants calculated each participant's Opening Balance Credit by projecting the accrued benefit to normal retirement age using statutory interest rate set out in 26 U.S.C. 417(e)(3), which was 5.05% per annum on the date of conversion and reducing the benefit back to present cash value using a discount rate of 8% per annum.

53. For participants under age 45 on September 1, 1998, Defendants calculated each participant's Opening Balance Credit by projecting the accrued benefit to normal retirement age using statutory interest rate set out in 26 U.S.C. 417(e)(3), which was 5.05% per annum on the date of conversion and reducing the benefit back to present cash value using a discount rate of 7% per annum.

54. As a result of Defendants' use of a discount rate in excess of the 417(e)(3) interest rate when calculating the actuarial equivalent of Plaintiffs' accrued benefits under the Predecessor Mercantile Plan, Plaintiffs' Opening Balance Credits were in fact less than the actuarial equivalent of their accrued benefits under the Predecessor Mercantile Plan.

55. The Plan's benefit formula used to compute Plaintiffs' accrued benefit commencing at normal retirement age and to convert it into a present value lump sum violates the present value calculation rules set forth in ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3); 26 U.S.C. § 411(c)(3); 26 C.F.R. § 1.411(c)-1(e); IRC Notice 96-8; ERISA § 203(e)(2), 29 U.S.C. § 1053(e)(2); Internal Revenue Code § 417(e)(3); Treasury Regulation 1.417(e)-1(d); and, as a result, violates ERISA § 204(g), 29 U.S.C. § 1054(g).

56. As a result of the Defendants' violation of ERISA § 204(g), Plaintiffs and the Class have lost substantial sums in pension benefits.

57. Pursuant to ERISA § 502(a)(3), 29 U.S.C. §1132(a)(3), Plaintiffs and the Class are entitled to appropriate equitable relief to redress the Plan's violations of the foregoing provisions of ERISA and to enforce such provisions, and incidental monetary relief mechanically flowing from that injunctive relief in the form of a common fund equal to the difference between what Plaintiffs and Class members were paid under the

unlawful method of computing their pension benefits and what the court-ordered recalculation of pension benefits shows they should have been paid.

## COUNT II

**(Violation of ERISA § 204(b)(1)(H) Prohibition Against Reduction Due to Age)**

58. Plaintiffs incorporate by reference the allegations of paragraphs 1-47 above in this Count.

59. ERISA § 204(b)(1)(H) prohibits the reduction of a participant's benefit accrual as the result of the attainment of any age. 29 U.S.C. § 1054(b)(1)(H).

60. Section 4.2 of the Mercantile Plan provided that each participant's Cash Balance Account was to be credited with an Opening Balance Credit in a lump sum equal to the actuarial present value of the participant's benefit accrued under the Predecessor Mercantile Plan.

61. ERISA requires that any lump sum calculation of a participant's accrued pension benefit must be the actuarial equivalent of the participant's normal retirement benefit in the form of an annuity commencing at normal retirement age (typically age 65). ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3); 26 U.S.C. § 411(c)(3); 26 C.F.R. § 1.411(c)-1(e); IRC Notice 96-8.

62. For participants age 45 and older on September 1, 1998, Defendants calculated each participant's Opening Balance Credit by projecting the accrued benefit to normal retirement age using the statutory interest rate set out in 26 U.S.C. 417(e)(3), which was 5.05% per annum on the date of conversion and reducing the benefit back to present cash value using a discount rate of 8% per annum.

63. For participants under age 45 on September 1, 1998, Defendants calculated each participant's Opening Balance Credit by projecting the accrued benefit to normal retirement age using the statutory interest rate set out in 26 U.S.C. 417(e)(3), which was 5.05% per annum on the date of conversion and reducing the benefit back to present cash value using a discount rate of 7% per annum.

64. As a result of Defendants' use of an 8% discount rate rather than a 7% discount rate when calculating the actuarial equivalent of participants' accrued benefits under the Predecessor Mercantile Plan, Plaintiffs and Class members who were age 45 and older on December 31, 1998, had Opening Balance Credits whose actuarially equivalency was lower than the Opening Credit Balances of those participants who were younger than age 45 on December 31, 1998.

65. All subsequent benefit accruals in the form of interest credits applied by the Plan formula to the Cash Balance Account were calculated as a percentage of the Cash Balance Account balance.

66. As a result of having a lower Opening Balance Credit, all subsequent interest credits applied to the Cash Balance Account balance of those participants who were age 45 or older on December 31, 1998, were less than those interest credits applied to the Cash Balance Account balance of those participants who were under age 45 on December 31, 1998.

67. The Plan's benefit formula used to compute the accrued benefit for Plaintiffs and Class members who were age 45 and older on December 31, 1998, violates ERISA § 204(b)(1)(H), 29 U.S.C. § 1054(b)(1)(H).

68. As a result of the Defendants' violation of ERISA § 204(g), Plaintiffs and the Class have lost substantial sums in pension benefits.

69. Pursuant to ERISA § 502(a)(3), 29 U.S.C. §1132(a)(3), Plaintiffs and the Class are entitled to appropriate equitable relief to redress the Plan's violations of the foregoing provisions of ERISA and to enforce such provisions, and incidental monetary relief mechanically flowing from that injunctive relief in the form of a common fund equal to the difference between what Plaintiffs and Class members were paid under the unlawful method of computing their pension benefits and what the court-ordered recalculation of pension benefits shows they should have been paid.

## COUNT III

### (Alternatively, Violation of ERISA § 204(h) Failure to Give Proper Notice of Plan Amendment)

70. Plaintiffs incorporate by reference the allegations of paragraphs 1-47 above in this Count.

71. Section 204(h) of ERISA (the version in effect in 1998) provided that a plan may not be amended to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides written notice, setting forth the plan amendment and its effective date to each participant in the plan. ERISA § 204(h), 29 U.S.C. § 1054(h) (1998).

72. The purported amendment, if effective, significantly reduced Plaintiffs' rate of benefit accrual.

73. The purported amendment would have been effective on January 1, 1999.

74. In order to comply with Section 204(h), Defendants were required by law to provide Plaintiffs and the Class with written notice, setting forth the plan amendment and its effective date and the fact that their benefits may be reduced by the amendment to each participant in the plan no later than December 15, 1998.

75. Defendants failed to provide Plaintiff and the Class with written notice of the purported amendment by December 15, 1998.

76. Defendants' failure to provide timely notice of the purported amendment violated ERISA § 204(h), 29 U.S.C. § 1054(h) (1998).

77. As a result of Defendants' violation of Section 204(h), Plaintiff and the Class have lost substantial sums in pension benefits.

78. Pursuant to ERISA § 502(a)(3), 29 U.S.C. §1132(a)(3), Plaintiff and the Class are entitled to appropriate equitable relief to redress the Defendants' violation of Section 204(h) in the form of an order declaring the Purported Amendment ineffective and for the incidental monetary relief mechanically flowing from that injunctive relief in a common fund equal to the difference between their pension benefits as calculated under the unlawful Purported Amendment and as re-calculated under the terms of the Plan in effect prior to January 1, 1999.

## COUNT IV

**(Alternatively, Claim for Benefits Due Pursuant to ERISA § 502(a)(1)(B))**

79. Plaintiffs incorporate by reference the allegations of paragraphs 1-78 above in this Count.

80. Alternatively, pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), Plaintiffs and the Class seek damages in a common fund equal to the difference between

their pension benefits as calculated under the unlawful Plan terms and as re-calculated under the lawful terms of the Plan.

**WHEREFORE**, Plaintiffs and the Class pray for the following relief:

a. Certification of this action as a class action with the Class defined as:

> All current and vested former U.S. Bank Pension Plan participants, and their beneficiaries, who accrued benefits prior to September 1, 1998, and who had active Cash Balance Accounts on and after September 1, 1998;

b. Judgment against Defendants and in favor of Plaintiffs and the Class on all claims herein, including:

(1) A declaration that Defendants' practices and conduct as alleged in Count I violate ERISA § 204(g), 29 U.S.C. § 1054(g), and are unlawful;

(2) A declaration that Defendants' practices and conduct as alleged in Count II violate ERISA § 204(b)(1)(H), 29 U.S.C. § 1054(b)(1)(H), and are unlawful; and/or

(3) A declaration that Defendants violated ERISA § 204(h), 29 U.S.C. § 1054(h), and that the Plan's purported amendment purportedly effective on January 1, 1999, is ineffective and void *ab initio*; and

(4) An Order requiring Defendants to reform the Plan to the extent necessary to correct the unlawful practices and Plan provisions as described in Counts I, II, and/or III.

c. In conjunction with the equitable relief requested in preceding subparagraphs b(1) through b(4), an Order requiring the Plan to recalculate and pay Plaintiffs and the Class members the difference between the pension benefits which they

have received and the pension benefits which they would have received as alleged in Counts I-III.

    d.    In conjunction with the Order requested in the preceding subparagraph c, an Order creating a common fund equal to the amount of pension benefits due to the Plaintiffs and the Class;

    e.    Alternatively, judgment against Defendants and in favor of Plaintiffs and the Class on their claims for additional benefits asserted in Count IV;

    f.    Creation of a common fund equal to the amount of incidental additional pension benefits due Plaintiffs and the Class as asserted in Count IV;

    g.    Pre- and post-judgment interest and costs;

    h.    Attorneys' fees and costs of this action pursuant to the common fund/benefit doctrine or any other applicable law; and

    i.    Any other and further relief as the Court deems just, proper, and equitable.

Dated:  May 21, 2009                        Respectfully submitted,

                                              **Schlichter, Bogard & Denton LLP**

                                              /s/ Matthew H. Armstrong
                                              Matthew H. Armstrong
                                              Jerome J. Schlichter
                                              Roger C. Denton
                                              Troy A. Doles
                                              100 S. Fourth Street, Suite 900
                                              St. Louis MO 63102
                                              Tel:    314-621-6115
                                              Fax:   314-621-7151
                                              marmstrong@uselaws.com
                                              jschlichter@uselaws.com
                                              rdenton@uselaws.com
                                              tdoles@uselaws.com