**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JOSEPH J. MEZYK, et al., Individually, and On Behalf Of All Those Similarly Situated, | |
| Plaintiffs, | Case No. 3:09-cv-384-JPG-DGW |
| vs. | |
| U.S. BANK PENSION PLAN and U.S. BANCORP, INC., | **JURY TRIAL DEMAND** |
| Defendants. | |
| | Consolidated with: |
| THOMAS L. PELLETT and RICHARD A. WILLIAMS, Individually, and on Behalf Of All Others Similarly Situated, | |
| Plaintiffs, | Case No. 3:10-cv-696-JPG-DGW |
| vs. | |
| U.S. BANK PENSION PLAN, | **JURY TRIAL DEMAND** |
| Defendant. | |

## CONSOLIDATED COMPLAINT

Plaintiffs Joseph J. Mezyk, Mary P. Mulqueeny, Doris L. Carthy, Peggy B. Raymond, Shirley Chatman, Thomas L. Pellett, Richard A. Williams, Edward W. Sunder III, and Louis R. Jarodsky, individually and on behalf of all others similarly situated, for their cause of action against defendants U.S. Bank Pension Plan and U.S. Bancorp, Inc., state:

# The Parties

1.      Plaintiff Joseph J. Mezyk is and at all times material hereto has been a citizen of the State of Illinois and is a "participant" in the U.S. Bank Pension Plan within the meaning of the Employee Retirement Income Security Act ("ERISA") § 3(7), 29 U.S.C. § 1002(7).

2.      Plaintiff Mary Mulqueeny is and at all times material hereto has been a citizen of the State of Illinois and is a "participant" in the U.S. Bank Pension Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

3.      Plaintiff Doris Carthy is and at all times material hereto has been a citizen of the State of Illinois and is a "participant" in the U.S. Bank Pension Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

4.      Plaintiff Peggy Raymond is and at all times material hereto has been a citizen of the State of Illinois and is a "participant" in the U.S. Bank Pension Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

5.      Plaintiff Shirley Chatman is and at all times material hereto has been a citizen of the State of Illinois and is a "participant" in the U.S. Bank Pension Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

6.      Plaintiff Thomas L. Pellett is and at all times material hereto has been a citizen of the State of Missouri and is a "participant" in the U.S. Bank Pension Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

7.      Plaintiff Richard A. Williams is and at all times material hereto has been a citizen of the State of Missouri and is a "participant" in the U.S. Bank Pension Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

8.      Plaintiff Edward W. Sunder III is and at all times material hereto has been a citizen of the State of Missouri and is a "participant" in the U.S. Bank Pension Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

9.    Plaintiff Louis R. Jarodsky is and at all times material hereto has been a citizen of the State of Missouri and is a "participant" in the U.S. Bank Pension Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

10.    Defendant U.S. Bank Pension Plan is a "defined benefit plan" (the "Plan") within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35), and is the successor in interest to the Firstar Employees' Pension Plan, which was the successor in interest to the Mercantile Bancorporation Inc. Retirement Plan.

11.    Defendant U.S. Bancorp Inc. ("U.S. Bank") is and at all times material hereto was a Delaware corporation registered to do business in Illinois and doing business in this judicial district, and is the "Plan Sponsor" of the U.S. Bank Pension Plan within the meaning of ERISA § 3(16), 29 U.S.C. § 1002(16).

## Jurisdiction and Venue

12.    This is a civil enforcement action brought pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a).  This court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, ERISA § 502(e)(1), and 29 U.S.C. § 1132(e)(1).

13.    Venue is proper in this judicial district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), in that the breach upon which this suit is premised occurred in this judicial district, damages occurred directly to plaintiffs in this judicial district and/or because one or more of the defendants may be found doing business in this judicial district.

## Nature of the Action

14.    In Count I, plaintiffs and Class 1 (as hereafter defined) seek injunctive relief against defendants pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), in the form of a declaration that the purported amendment to the Plan purportedly

effective on January 1, 1999, is ineffective, invalid, and void *ab initio* because of defective, misleading and insufficient notice in violation of ERISA § 204(h), 29 U.S.C. § 1054(h).

15.　　In Count II, plaintiffs and Class 1 seek injunctive relief against defendants pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), in the form of a declaration that the purported amendment to the Plan purportedly effective on January 1, 1999, is ineffective, invalid, and void *ab initio* because of defective, misleading and insufficient information contained in the Summary Plan Description in violation of ERISA § 102, 29 U.S.C. § 1022.

16.　　In Count III, plaintiffs and Class 1 seek injunctive relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), in the form of a declaration that defendants' method of computing their opening balance credits and the continuing computations under the Plan formula thereafter, constituted a breach of contract, i.e., a breach of the terms of the Plan as construed under federal law, and consequential damages flowing from such breach of contract.

17.　　Incidental to the injunctive relief sought in Counts I, II, and III, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and mechanically flowing from that injunctive relief, plaintiffs and Class 1 also seek a court order requiring the Plan to create a common fund from which defendants are ordered to make a retroactive payment of pension benefits to plaintiffs and Class 1 in an amount equal to the difference between what plaintiffs and members of Class1 were paid under the unlawful method of computing their pension benefits and what the court-ordered recalculation of pension benefits shows they should have been paid.

18.　　Alternatively, in Count IV, plaintiffs and Class 1 seek a judgment pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), against the Plan for the unlawful computation of their pension benefits in violation of ERISA and seek

damages in the form of a common fund to recover pension benefits due them based upon a lawful computation of their pension benefits.

19.     In Count V, plaintiffs and Class 2 seek injunctive relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), in the form of a declaration that defendants' method of computing their opening balance credits violated ERISA's prohibition against reducing a benefit as the result of attaining any age, ERISA § 204(b)(1)(H), 29 U.S.C. § 1054(b)(1)(H), and a court order requiring the Plan to recalculate their opening balance credits and subsequent pension benefits in accordance with the requirements of ERISA.

20.     Incidental to the injunctive relief sought in Count V, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and mechanically flowing from that injunctive relief, plaintiffs and Class 2 also seek a court order requiring the Plan to create a common fund from which defendants are ordered to make a retroactive payment of pension benefits to plaintiffs and Class 1 in an amount equal to the difference between what plaintiffs and members of Class1 were paid under the unlawful method of computing their pension benefits and what the court-ordered recalculation of pension benefits shows they should have been paid.

21.     Alternatively, in Count VI, plaintiffs and Class 2 seek a judgment pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), against the Plan for the unlawful computation of their pension benefits in violation of ERISA and seek damages in the form of a common fund to recover pension benefits due them based upon a lawful computation of their pension benefits.


## General Allegations of Fact

22.     Mercantile Bancorporation ("Mercantile") hired plaintiff Peggy Raymond on October 30, 1956.

23.     Mercantile hired plaintiff Shirley Chatman on April 27, 1957.

24.     Mercantile hired plaintiff Doris Carthy on September 4, 1962.

25.     Mercantile hired plaintiff Mary Mulqueeny on April 1, 1968.

26.     Mercantile hired plaintiff Joseph Mezyk on February 13, 1974.

27.     Mercantile hired plaintiff Thomas L. Pellett in 1992.

28.     Mercantile hired plaintiff Richard A. Williams in 1993.

29.     Mercantile hired plaintiff Edward W, Sunder III in July, 1969.

30.     Mercantile hired plaintiff Louis R. Jarodsky in August, 1978.

31.     Mercantile established and sponsored the Mercantile Bancorporation Inc. Retirement Plan (the "Mercantile Plan") effective January 1, 1981, as a traditional final average pay defined benefit pension plan.

32.     Between January 1, 1981, and December 31, 1998, the Mercantile Plan provided a monthly pension benefit to its participants at normal retirement age based upon a formula that took into account either a specified dollar amount per years of service or a specified percentage of a participant's salary in the final year or years of his/her employment known as a traditional final average pay defined benefit plan.

33.     Mercantile purportedly amended the Mercantile Plan effective on December 31, 1998, and converted it from a traditional final average pay defined benefit plan to a cash balance defined benefit plan (the "Plan").

34.     The Plan provided that effective on January 1, 1999, each participant's cash balance account was to be credited with an opening balance credit in a notional lump sum equal to the actuarial present value of the participant's benefit accrued through December 31, 1998, under the predecessor Mercantile Plan.

35.     In order to calculate the actuarial present cash value of each plan participant's accrued benefit under the predecessor Mercantile Plan as of December 31, 1998, ERISA required defendants to project the accrued benefit out to normal

retirement age and then reduce that benefit to present cash value—a process known as the "whipsaw calculation."

36.    Under the terms of the Mercantile Plan, the normal retirement age was 65.

37.    For participants ages 45 and older as of December 31, 1998, defendants calculated each participant's opening balance credit by projecting the accrued benefit to normal retirement age using the statutory interest rate set out in ERISA § 417(e)(3), 26 U.S.C. § 417(e)(3), which was 5.05% per annum on January 1, 1999, and reducing the benefit back to a claimed "present cash value" using a discount rate of 8% per annum.

38.    For participants under age 45 on December 31, 1998, defendants calculated each participant's opening balance credit by projecting the accrued benefit to normal retirement age using the statutory interest rate set out in ERISA § 417(e)(3), 26 U.S.C. § 417(e)(3), which was 5.05% per annum on January 1, 1999, and reducing the benefit back to a claimed "present cash value" using a discount rate of 7% per annum.

39.    On January 1, 1999, the Plan credited each participant's account with a lump sum determined by the calculations set forth in the preceding two paragraphs to a claimed "present cash value" using either the 8% or the 7% discount rate, depending on the participant's age as of that date.

40.    Defendants informed plaintiff participants, in the summary descriptions of the Plan (including but not limited to the Summary Plan Description (SPD) and the "204(h) Notice") that the participants' individual opening balance credits would be equal to the "present value" of the benefit each participant had earned through December 31, 1997 under the Mercantile Plan ("[y]our initial cash balance is based on the present value of the benefit you earned through December 31, 1997 under the old Mercantile Retirement Plan").

41.     Defendants failed to inform plaintiff participants in the Plan documents (including but not limited to the Summary Plan Description (SPD) and the "204(h) Notice") that the participants' individual opening balance credits would not be equal to, but in fact would be less than, the true present value of the benefit each participant had earned through December 31, 1997 under the Mercantile Plan.

42.     Defendants informed plaintiff participants, in the summary descriptions of the Plan (including but not limited to the Summary Plan Description (SPD) and the "204(h) Notice") that each participant would, upon conversion to the cash balance plan, immediately begin to receive a "cash balance credit" and an "interest credit" in his/her cash balance account, built upon and in addition to that participant's opening balance credit based upon the true present value of the benefit each participant had earned through December 31, 1997 under the Mercantile Plan.

43.     Defendants failed to inform plaintiff participants in the Plan documents (including but not limited to the Summary Plan Description (SPD) and the "204(h) Notice") that, upon conversion to the Cash Balance Plan, participants would not immediately begin to receive a "cash balance credit" and an "interest credit" in his/her cash balance account, built upon and in addition to that participant's opening balance credit based upon the true present value of the benefit each participant had earned through December 31, 1997 under the Mercantile Plan.

44.     Defendants failed to inform plaintiff participants in the Plan documents that upon conversion to the cash balance plan plaintiff participants could and in most cases would suffer a period of "wear-away" when their cash balance accounts in fact would earn no credits whatsoever, and in fact through statements made in the plan documents (including but not limited to the Summary Plan Description (SPD) and the "204(h) Notice") that they would not suffer such period of "wear-away."

8

45.     Firstar Corporation ("Firstar") bought Mercantile on September 20, 1999.

46.     On December 31, 1999, the Plan was merged into the Firstar Employee Pension Plan (the "Firstar Plan"). The cash balance benefit formula for former Mercantile Bank employees, including plaintiffs, remained unchanged after the pension plan merger.

47.     Firstar bought the majority of stock of U.S. Bancorp ("U.S. Bank") on February 27, 2001, and U.S. Bancorp was the surviving entity of the merger.

48.     The Firstar Plan (including the cash balance benefit formula for former Mercantile Plan participants) was merged into the U.S. Bancorp Pension Plan effective January 1, 2002. The U.S. Bancorp Pension Plan later changed its name to the U.S. Bank Pension Plan, the name of the surviving entity today.

49.     Plaintiff Joseph Mezyk terminated his employment with Mercantile Bank on or about September 15, 2000, and took his pension benefit from the Mercantile Plan in the form of a single lump sum.

50.     Plaintiff Mary Mulqueeny terminated her employment with Mercantile Bank on or about December 31, 2002, and took her pension benefit from the Mercantile Plan in the form of a single lump sum.

51.     Plaintiff Doris Carthy terminated her employment with Mercantile Bank on or about September 15, 2001, and took her pension benefit from the Mercantile Plan in the form of an annuity.

52.     Plaintiff Peggy Raymond terminated her employment with Mercantile Bank on or about October 31, 2000, and took her pension benefit from the Mercantile Plan in the form of an annuity.

53.     Plaintiff Shirley Chatman terminated her employment with Mercantile Bank on or about June 28, 2000, and took her pension benefit from the Mercantile Plan in the form of an annuity.

54. Plaintiff Thomas L. Pellett terminated his employment with Mercantile Bank on or about August 1, 2000, and took his pension benefit from the Mercantile Plan in the form of a lump sum.

55. Plaintiff Richard A. Williams terminated his employment with Mercantile Bank on or about August 1, 2000, and took his pension benefit from the Mercantile Plan in the form of a lump sum.

56. Plaintiff Edward W. Sunder III terminated his employment with Mercantile Bank on or about August 28, 2000, and took his pension benefit from the Mercantile Plan in the form of a lump sum.

57. Plaintiff Louis R. Jarodsky terminated his employment with Mercantile Bank on or about August 28, 2000, and took his pension benefit from the Mercantile Plan in the form of a lump sum.

## Class Action Allegations

58. Plaintiffs request that this Court certify the following two classes:

    (a) **Class 1.** All current and vested former U.S. Bank Pension Plan participants, and their beneficiaries, who accrued benefits prior to January 1, 1999, and who had active cash balance accounts on and after January 1, 1999.

    (b) **Class 2.** All current and vested former U.S. Bank Pension Plan participants age 45 and older as of January 1, 1999, and their beneficiaries, who accrued benefits prior to January 1, 1999, and who had active cash balance accounts on and after January 1, 1999.

59. Each class can be identified by objective criteria in records maintained by defendants.

60.     Certification of each class is appropriate pursuant to Rule 23(a)(1), Fed. R. Civ. P., because each class is comprised of thousands of current and former Plan participants and each class is thus so numerous that joinder of all Class members would be impracticable.

61.     Certification of this class is appropriate pursuant to Rule 23(a)(2), Fed. R. Civ. P., because there are common questions of law and fact which predominate, including, *inter alia*:

(a)     whether defendants violated ERISA § 204(h), 29 U.S.C. § 1054(h), by failing to provide plaintiff participants and Class 1 members with an adequate written notice setting forth the purported amendment purportedly effective January 1, 1999;

(b)     whether defendants violated ERISA §§ 102 and 104(b), 29 U.S.C. §§ 1022 and 1024(b), by failing to provide plaintiff participants and Class members with an adequate Summary Plan Description setting forth the purported amendment purportedly effective January 1, 1999;

(c)     whether defendants breached their contract with plaintiffs and members of Class 1, and if so, what consequential damages plaintiffs and members of Class 1 have suffered;

(d)     whether plaintiff participants and Class members are entitled to injunctive relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3);

(e)     whether the purported amendment purportedly effective January 1, 1999, is ineffective, invalid, and void *ab initio*;

(f)     whether defendants' method of calculating plaintiff participants' and Class 2 members' opening balance credit violated ERISA's prohibition against reducing a benefit as the

result of attaining any age, ERISA § 204(b)(1)(H), 29 U.S.C. § 1054(b)(1)(H);

(g)   whether plaintiff participants and members of each Class are entitled to incidental damages which may flow from the injunctive relief in the form of recalculated benefits; and/or

(h)   whether plaintiff participants and members of each Class are entitled to recover damages in the form of additional benefits under the terms of the Plan pursuant to ERISA § 502(a)(1)(b), 29 U.S.C. § 1132(a)(1)(b).

62.   Certification of each Class is appropriate pursuant to Rule 23(a)(3), Fed. R. Civ. P., because plaintiff participants' claims are typical of those of each Class regarding whether defendants properly calculated plaintiff participants' and the Class members' opening balance credits and pension benefits in accordance with ERISA in a uniform practice applied to all members of each Class. Plaintiffs' claims are also typical of those of each Class because defendants failed to notify plaintiffs and each Class member of the purported amendment purportedly effective January 1, 1999, in accordance with the requirements of ERISA.

63.   Certification of each Class is appropriate pursuant to Rule 23(a)(4), Fed. R. Civ. P., because plaintiffs will fairly and adequately represent the interests of each member of each Class. Plaintiffs understand the basic issues in this case. Their interests are the same as, and not in conflict with, the interests of other members of each Class. Plaintiffs' counsel is experienced in and competent to handle class actions and complex litigation of this type.

64.   Certification of each Class is appropriate pursuant to Rule 23(b)(1), Fed. R. Civ. P., because there is a risk that the prosecution of separate actions would establish incompatible standards of conduct for defendants regarding the proper computation of pension benefits for all similarly situated participants.

65.     Certification of each Class is also appropriate pursuant to Rule 23(b)(2), Fed. R. Civ. P., because defendants have miscalculated and continue to miscalculate the pension benefits of plaintiff participants and the Class members, using the same methodologies contested in this case; therefore, defendants acted or refused to act on grounds generally applicable to both Classes making appropriate final injunctive relief or declaratory relief with respect to each Class as a whole.

66.     Certification of each Class is also appropriate pursuant to Rule 23(b)(3), Fed. R. Civ. P., because a class action is superior to other available litigation methods for the fair and efficient adjudication of this controversy, as joinder of all Class members is impracticable.  Furthermore, many Class members injured by defendants' conduct will not be compensated for their injuries in the absence of a class action since it is too expensive for many individual members to prosecute this litigation.  Even if individual Class members could afford to prosecute this litigation alone, individual litigation magnifies the delay and expense to all parties and to the court system of resolving the controversies engendered by the defendants' actions.  By contrast, a class action presents fewer management difficulties and provides the benefits of unitary adjudication, economies of scale and comprehensive supervision by a single court.

## **Count I**: Violation of ERISA § 204(h), 29 U.S.C. § 1054(h)<br>(Failure to Give Proper Notice of Plan Amendment)

67.     This Count I constitutes a claim by all named plaintiffs and members of Class 1 as defined in ¶58(a).

68.     Plaintiffs incorporate by reference the allegations of paragraphs 1-66, inclusive.

69.     ERISA § 204(h), 29 U.S.C. § 1054(h) (the version in effect in 1998 and at all times material hereto) provided that a plan may not be amended to provide for

a significant reduction in the rate of future benefit accrual unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides written notice, setting forth the plan amendment and its effective date to each participant in the plan. ERISA § 204(h), 29 U.S.C. § 1054(h) (1998).

70. The purported amendment, if effective, significantly reduced plaintiffs' rate of benefit accrual.

71. The purported amendment would have been effective on January 1, 1999.

72. In order to comply with ERISA § 204(h), defendants were required by that statute to provide plaintiffs and members of Class 1 with written notice, setting forth the plan amendment and its effective date and the fact that their benefits may be reduced by the amendment to each participant in the plan no later than December 15, 1998.

73. Defendants failed to provide plaintiffs and the members of Class 1 with such written notice of the purported amendment by December 15, 1998.

74. Defendants' failure to provide such timely written notice of the purported amendment violated ERISA § 204(h), 29 U.S.C. § 1054(h) (1998).

75. As a result of defendants' violation of ERISA § 204(h), plaintiffs and the members of Class 1 have lost substantial sums in pension benefits.

76. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), plaintiffs and the members of Class 1 are entitled to appropriate equitable relief to redress the defendants' violation of ERISA § 204(h) in the form of an order declaring the purported amendment ineffective and for the incidental monetary relief mechanically flowing from that injunctive relief in a common fund equal to the difference between their pension benefits as calculated under the unlawful

purported amendment and as re-calculated under the terms of the Mercantile Plan in effect prior to January 1, 1999.

## <u>Count II</u>: Violation of ERISA § 102, 29 U.S.C. § 1022 (Misleading and Insufficient Summary Plan Description)

77.     This Count II constitutes a claim by all named plaintiffs and members of Class 1 as defined in ¶58(a).

78.     Plaintiffs incorporate by reference the allegations of paragraphs 1-76, inclusive.

79.     ERISA § 102, 29 U.S.C. § 1022 (the version in effect in 1998 and at all times material hereto) required that defendants furnish to all participants and beneficiaries of the Plan a Summary Plan Description.  The referenced statute required defendants, in such Summary Plan Description, *inter alia*, to advise plaintiff participants and beneficiaries, members of Class 1, of their rights and obligations under the Plan, and "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits" and that such Summary Plan Description be "written in a manner calculated to be understood by the average plan participant, and...sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."  ERISA § 102, 29 U.S.C. § 1022.

80.     Defendants did furnish to the participants a purported "summary plan description" but said document failed adequately, accurately, or sufficiently to advise or inform participants and beneficiaries of their rights and obligations under the Plan, or "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits" and thus was misleading and insufficient, in violation of ERISA § 102, 29 U.S.C. § 1022.

81.     Furthermore, the purported "summary plan description" furnished by defendants to plaintiff participants and beneficiaries, members of Class 1, affirmatively misinformed them that their opening balance credits would be based on the "present value" of their accrued benefits under the Mercantile Plan, as of December 31, 1997, and that their new cash balance account would begin to earn "cash balance credits" and "interest credits" in addition to their accrued benefits under the Mercantile Plan, immediately upon conversion to the cash balance plan on December 31, 1997.  Such information and representations were untrue.

82.     As a result of defendants' violation of ERISA § 102, 29 U.S.C. § 1022, plaintiffs and the members of Class 1 have lost substantial sums in pension benefits.

83.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), plaintiffs and the members of Class 1 are entitled to appropriate equitable relief to redress the defendants' violation of ERISA § 102, 29 U.S.C. § 1022 in the form of an order declaring the purported amendment ineffective and for the incidental monetary relief mechanically flowing from that injunctive relief in a common fund equal to the difference between their pension benefits as calculated under the unlawful purported amendment and as re-calculated under the terms of the Mercantile Plan in effect prior to January 1, 1999.

## **Count III: Breach of Contract (JURY TRIAL DEMAND)**

84.     This Count III constitutes a claim by all named plaintiffs and members of Class 1 as defined in ¶58(a).

85.     Plaintiffs incorporate by reference the allegations of paragraphs 1-83, inclusive.

86.     The Plan, as its terms were set forth in the "plan documents," including (a) the Mercantile Bancorporation Inc. Retirement Plan, attached hereto, marked "Exhibit 1" and by reference made a part hereof; (b) the 1999 Summary

Plan Description, attached hereto, marked "Exhibit 2" and by reference made a part hereof; and (c) the "204(h) notice" dated December 14, 1998, marked "Exhibit 3" and by reference made a part hereof, provided that each participant's cash balance account was to be credited with an opening balance credit in a lump sum equal to the actuarial present value of the participant's benefit accrued under the predecessor Mercantile Plan. Such "plan documents" constitute a contract between plaintiff participants and members of Class 1 on the one hand, and defendants on the other.

87.     Defendants, in fact, did not credit the participants in the Cash Balance Plan with an opening balance credit equal to the actuarial present value of the participant's benefit accrued under the predecessor Mercantile Plan, but with opening balances in amounts less than the actuarial present value of the participant's benefit accrued under the predecessor Mercantile Plan.

88.     Furthermore, ERISA law requires that any lump sum calculation of a participant's accrued pension benefit, or that any calculation of the true "present value" of a participant's accrued pension benefit, must be the actuarial equivalent of the participant's normal retirement benefit in the form of an annuity commencing at normal retirement age (typically age 65). ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3); 26 U.S.C. § 411(c)(3); 26 C.F.R. § 1.411(c)-1(e); IRS Notice 96-8.

89.     For participants age 45 and older as of January 1, 1999, defendants calculated each participant's opening balance credit by projecting the accrued benefit to normal retirement age using statutory interest rate set out in 26 U.S.C. § 417(e)(3), which was 5.05% per annum on the date of conversion and reducing the benefit back to a purported "present value" using a discount rate of 8% per annum.

90.     For participants under age 45 as of January 1, 1999, defendants calculated each participant's opening balance credit by projecting the accrued

benefit to normal retirement age using statutory interest rate set out in 26 U.S.C. § 417(e)(3), which was 5.05% per annum on the date of conversion and reducing the benefit back to a purported "present value" using a discount rate of 7% per annum.

91.     As a result of defendants' use of discount rates in excess of the 417(e)(3) interest rate when calculating the actuarial equivalent of plaintiffs' accrued benefits under the predecessor Mercantile Plan, plaintiffs' opening balance credits were in fact less than the actuarial equivalent, or the true present value, of their accrued benefits under the predecessor Mercantile Plan.

92.     The Plan's benefit formula used to compute Plaintiffs' accrued benefit commencing at normal retirement age and to convert it into a present value lump sum violates the present value calculation rules set forth in ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3); 26 U.S.C. § 411(c)(3); 26 C.F.R. § 1.411(c)-1(e); IRC Notice 96-8; ERISA § 203(e)(2), 29 U.S.C. § 1053(e)(2); Internal Revenue Code § 417(e)(3); Treasury Regulation 1.417(e)-1(d); and, as a result, violates ERISA § 204(g), 29 U.S.C. § 1054(g).

93.     Defendants' actions aforestated constituted a breach of contract.

94.     As a result of the defendants' breach, plaintiffs and the members of Class 1 are entitled to appropriate equitable relief to redress the Plan's violations of the foregoing provisions of ERISA and to enforce such provisions, and incidental monetary relief mechanically flowing from that injunctive relief in the form of a common fund equal to the difference between what plaintiffs and members of Class 1 were paid under the unlawful method of computing their pension benefits and what the court-ordered recalculation of pension benefits shows they should have been paid.

95.     Plaintiffs and the members of Class 1 are also thus entitled to damages for breach of contract, constituting the difference between what plaintiffs and

members of Class 1 were paid under the unlawful method of computing their pension benefits and what the court-ordered recalculation of pension benefits shows they should have been paid pursuant to the terms of the contract.

## Count IV
### (Alternatively, Claim for Benefits Due Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B))

96. This Count IV constitutes a claim by all named plaintiffs and members of Class 1 as defined in ¶58(a).

97. Plaintiffs incorporate by reference the allegations of paragraphs 1-95, inclusive.

98. Alternatively, pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), plaintiffs and members of Class 1 seek damages in a common fund equal to the difference between their pension benefits as calculated under the unlawful Plan terms and as recalculated under the lawful terms of the Plan.

## Count V: Violation of ERISA § 204(b)(1)(H), 29 U.S.C. § 1054(b)(1)(H)
### (Prohibition Against Reduction Due to Age)

99. This Count V constitutes a claim by all named plaintiffs and members of Class 2 as defined in ¶58(b).

100. Plaintiffs incorporate by reference the allegations of paragraphs 1-98, inclusive.

101. ERISA § 204(b)(1)(H), 29 U.S.C. § 1054(b)(1)(H) prohibits the reduction of a participant's benefit accrual as the result of the attainment of any age.

102. The Plan, as its terms were set forth in the "plan documents," including (a) the Mercantile Bancorporation Inc. Retirement Plan, attached hereto, marked "Exhibit 1" and by reference made a part hereof; (b) the 1999 Summary

Plan Description, attached hereto, marked "Exhibit 2" and by reference made a part hereof; and (c) the "204(h) notice" dated December 14, 1998, marked "Exhibit 3" and by reference made a part hereof, provided that each participant's cash balance account was to be credited with an opening balance credit in a lump sum equal to the actuarial present value of the participant's benefit accrued under the predecessor Mercantile Plan.

103.    ERISA law requires that any lump sum calculation of a participant's accrued pension benefit, or that any calculation of the true "present value" of a participant's accrued pension benefit, must be the actuarial equivalent of the participant's normal retirement benefit in the form of an annuity commencing at normal retirement age (typically age 65).  ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3); 26 U.S.C. § 411(c)(3); 26 C.F.R. § 1.411(c)-1(e); IRS Notice 96-8.

104.    For participants age 45 and older as of January 1, 1999, defendants calculated each participant's opening balance credit by projecting the accrued benefit to normal retirement age using statutory interest rate set out in 26 U.S.C. § 417(e)(3), which was 5.05% per annum on the date of conversion and reducing the benefit back to a purported "present value" using a discount rate of 8% per annum.

105.    For participants under age 45 as of January 1, 1999, defendants calculated each participant's opening balance credit by projecting the accrued benefit to normal retirement age using statutory interest rate set out in 26 U.S.C. § 417(e)(3), which was 5.05% per annum on the date of conversion and reducing the benefit back to a purported "present value" using a discount rate of 7% per annum.

106.    As a result of defendants' use of an 8% discount rate rather than a 7% discount rate when calculating the purported actuarial equivalent of participants' accrued benefits under the predecessor Mercantile Plan, plaintiffs and members of

Class 2 had opening balance credits whose actuarially equivalency was lower that the opening credit balances of those participants who were younger than age 45 on December 31, 1998.

107.    All subsequent benefit accruals in the form of interest credits applied by the cash balance plan formula to each participant's cash balance account were calculated as a percentage of each cash balance account balance.

108.    As a result of having a lower opening balance credit, due solely to age differential, all subsequent interest credits applied to the cash balance account balance of those participants who were age 45 or older on December 31, 1998, were less than those interest credits applied to the cash balance account balance of those participants who were under age 45 on December 31, 1998.

109.    The Cash Balance Plan's benefit formula used to compute the accrued benefit for plaintiffs and members of Class 2 violates ERISA § 204(b)(1)(H), 29 U.S.C. § 1054(b)(1)(H).

110.    As a result of the defendants' violation of ERISA § 204(b)(1)(H), 29 U.S.C. § 1054(b)(1)(H), plaintiffs and the members of Class 2 have lost substantial sums in pension benefits.

111.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), plaintiffs and the members of Class 2 are entitled to appropriate equitable relief to redress the Cash Balance Plan's violations of the foregoing provisions of ERISA and to enforce such provisions, and incidental monetary relief mechanically flowing from that injunctive relief in the form of a common fund equal to the difference between what plaintiff participants and members of Class 2 were paid under the unlawful method of computing their pension benefits and what the court-ordered recalculation of pension benefits shows they should have been paid.

## Count VI
## (Alternatively, Claim for Benefits Due Pursuant to
## ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B))

112.    This Count VI constitutes a claim by all named plaintiffs and members of Class 2 as defined in ¶58(b).

113.    Plaintiffs incorporate by reference the allegations of paragraphs 1-111, inclusive.

114.    Alternatively, pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), plaintiffs and members of Class 2 seek damages in a common fund equal to the difference between their pension benefits as calculated under the unlawful Plan terms and as recalculated under the lawful terms of the Plan.

**WHEREFORE,** plaintiffs pray for the following relief:

(a)    Certification of this action on behalf of Class 1, defined as:

> All current and vested former U.S. Bank Pension Plan participants, and their beneficiaries, who accrued benefits prior to January 1, 1999, and who had active cash balance accounts on and after January 1, 1999.

(b)    Certification of this action on behalf of Class 2, defined as:

> All current and vested former U.S. Bank Pension Plan participants age 45 and older as of January 1, 1999, and their beneficiaries, who accrued benefits prior to January 1, 1999, and who had active cash balance accounts on and after January 1, 1999.

(c)    A jury trial on the Count III common law breach of contract claim;

(d)    Judgment against defendants, and each of them, and in favor of plaintiffs and the members of Class 1 on all claims as set forth in Counts I-IV, inclusive, including:

(i)     A declaration that defendants' practices and conduct as alleged in Count I violate ERISA § 204(h), 29 U.S.C. § 1054(h), and are unlawful, and that the Plan's purported amendment purportedly effective on January 1, 1999, is ineffective and void *ab initio*;

(ii)    A declaration that defendants' practices and conduct as alleged in Count II violate ERISA § 102, 29 U.S.C. § 1022, and are unlawful and that the Plan's purported amendment purportedly effective on January 1, 1999, is ineffective and void *ab initio*;

(iii)   A declaration that defendants' practices and conduct as alleged in Count III constituted a breach of defendants' contract with plaintiffs and the members of Class 1, and a judgment awarding damages consequential to that breach;

(iv)    An order requiring defendants to reform the Cash Balance Plan to the extent necessary to correct the unlawful practices and Plan provisions as described in Counts I-III, inclusive;

(v)     In conjunction with the equitable relief requested in ¶¶(c)(i)-(iv) above, an order requiring the Plan to recalculate and pay plaintiffs and the members of Class 1 the difference between the pension benefits which they have received and the pension benefits which they would have received as alleged in Counts I-III;

(vii)   In conjunction with the order requested in ¶(c)(v) above, an order creating a common fund equal to the amount of pension benefits due to the plaintiffs and the members of Class 1;

(viii)  Alternatively, judgment against defendants, and each of them, and in favor of plaintiffs and the members of Class 1 on their claims for additional benefits asserted in Count IV;

(ix)     Creation of a common fund equal to the amount of incidental additional pension benefits due plaintiffs and the members of Class 1 as asserted in Count IV.

(e)     Judgment against defendants, and each of them, and in favor of plaintiffs and the members of Class 2 on all claims as set forth in Counts V-VI, inclusive, including:

(i)     A declaration that defendants' practices and conduct as alleged in Count VI violate ERISA § 204(b)(1)(H), 29 U.S.C. § 1054(b)(1)(H), and are unlawful;

(ii)     An order requiring defendants to reform the Cash Balance Plan to the extent necessary to correct the unlawful practices and Plan provisions as described in Count V;

(iii)     In conjunction with the equitable relief requested in ¶¶(d)(i)-(ii) above, an order requiring the Plan to recalculate and pay plaintiffs and the members of Class 2 the difference between the pension benefits which they have received and the pension benefits which they would have received as alleged in Count V;

(vii)     In conjunction with the order requested in ¶(d)(iii) above, an order creating a common fund equal to the amount of pension benefits due to the plaintiffs and the members of Class 2;

(viii)     Alternatively, judgment against defendants, and each of them, and in favor of plaintiffs and the members of Class 2 on their claims for additional benefits asserted in Count VI;

(ix)     Creation of a common fund equal to the amount of incidental additional pension benefits due plaintiffs and the members of Class 2 as asserted in Count VI.

(f)     Pre- and post-judgment interest and costs;

(g)     Attorneys' fees and costs of this action pursuant to the common fund/benefit doctrine or any other applicable law; and

(h)     Any other and further relief as to the Court may seem just, proper and equitable in the premises.

Dated: November 11. 2010

/s/ Matthew H. Armstrong
Armstrong Law Firm LLC
Matthew H. Armstrong, Esq.
8816 Manchester Rd., No. 109
St. Louis, MO 63144
Telephone (314) 258-0212
matt@mattarmstronglaw.com

David Steelman, Esq.
901 Pine Street, Suite 110
Rolla, MO 65402
Telephone (866) 915-4793

Matthew H. Hearne, Esq.
7711 Bonhomme, Suite 330
St. Louis, MO  63105
Telephone (314) 863-0200
Telefax (314) 863-4247
mhearne@hb-law.com

**Attorneys for Plaintiffs
and the Putative Class**

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

Gregory P. Rogers
rogers@taftlaw.com

Ryan M. Martin
martinr@taftlaw.com

Mary M. Bonacorsi
mbonacorsi@thompsoncoburn.com

/s/ Matthew H. Armstrong
Matthew H. Armstrong