UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH J. MEZYK, et al., Individually, and On Behalf Of All Those Similarly Situated,<br><br>    Plaintiffs,<br><br>        v.<br><br>U.S. BANK PENSION PLAN and U.S. BANCORP, INC.,<br><br>    Defendants. | No. 3:09-cv-384-JPG<br><br><br><br><br><br>Consolidated with |
| THOMAS L. PELLETT and RICHARD A. WILLIAMS, Individually, and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>        v.<br><br>U.S. BANK PENSION PLAN,<br><br>    Defendant. | No. 3:10-cv-696-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the plaintiffs' motion for class certification (Doc. 68). The plaintiffs also ask the Court to appoint plaintiffs Joseph J. Mezyk, Mary P. Mulqueeny, Doris L. Carthy, Peggy B. Raymond, Shirley Chatman, Thomas L. Pellett and Richard A. Williams as representatives of the class and to appoint Matthew H. Armstrong and David L. Steelman as class counsel. Defendants U.S. Bank Pension Plan and U.S. Bancorp, Inc. (collectively, "U.S. Bank") have responded to the motion (Doc. 76), and the plaintiffs have replied to that response (Doc. 81).[1] The Court held a hearing on the motion on January 25, 2011.

---

[1] The Court notes that it does not consider the claims of plaintiffs Edward W. Sunder III and Louis R. Jarodsky in this order except to the extent they would be included in the putative classes. By separate order, the Court has dismissed the claims of those plaintiffs with prejudice.

**I.       Background**

This matter involves provisions in the Mercantile Bancorporation Inc. ("Mercantile") Retirement Plan ("Plan"), a predecessor of the U.S. Bank Pension Plan,[2] that governed the transition between Mercantile's prior traditional "final average pay" defined benefit pension plan to a cash balance defined benefit pension plan on December 31, 1998. As part of the conversion from the traditional defined benefit plan to the cash balance plan, the Plan calculated the opening balance of each participant's cash balance account using a whipsaw type calculation. It first projected the annuity to which the participant would have been entitled as of December 31, 1997, under the prior plan at age 65 (the Plan's normal retirement age) using the statutory annual interest rate of 5.05%. It then discounted that sum using a discount rate of 7% for those under 45 years old. For those 45 years old and older, it added early retirement subsidy credits to the annuity calculated as of December 31, 1997, and discounted the sum using a discount rate of 8%. Finally, the Plan added to those amounts "pay credits" (calculated as a percentage of pay depending on the participant's age) and "interest credits" (calculated as a percentage of the discounted annuity amounts) for the year of 1998 to arrive at the participant's opening balance of his cash balance account as of December 31, 1998. Participants were then able to continue to receive pay credits and interest credits (calculated as a variable percentage of the cash balance account balances) annually to augment those cash balance account balances.

Under the Plan, when a participant who had participated in both the traditional final average pay defined benefit and the cash balance features of the Plan retired, he would receive the

---

[2]U.S. Bank Pension Plan is the successor to the Mercantile Bancorporation Inc. Retirement Plan, which was the relevant plan during the transition and the participants at issue in this case. For clarity's sake, the Court's references to the Plan in this order include either plan, as appropriate.

greater of (1) the value of the accrued benefit as of December 31, 1998, under the traditional final average pay defined benefit feature, (2) the actuarial equivalent of the cash balance account balance determined using a whipsaw calculation or (3) the actual balance of the cash balance account.[3]  For those participants for whom the value of option (1) exceeded the value of options (2) and (3), the effect of the Plan amendment was to impose a "wearaway" transition, that is, a transition that guaranteed a retiring participant would receive *only* the accrued benefit under option (1) unless he had received sufficient pay and interest credits to cause the option (2) or (3) benefit to exceed the value of the option (1) benefit.  There would be, in effect, no further benefit accruals for such a participant until the balance tipped in favor of option (2) or (3).

On December 14, 1998, the Plan distributed notice and a new Summary Plan Description ("SPD") to participants describing the conversion from the traditional defined benefit plan to the cash balance plan.  The notice informed participants that, among other things, under the cash balance plan they would immediately begin to receive "cash balance credits" and "interest credits."

The plaintiffs in this case, all former employees of Mercantile, were Plan participants and were 45 years old or older at the time of conversion.  Thus, the Plan applied the deeper discount rate to them when it calculated the opening balances of their cash balance accounts.  Subsequently, plaintiffs Mezyk, Mulqueeny, Pellett, Williams, Sunder and Jarodsky retired and elected to take their benefits in the form of a lump sum, while plaintiffs Carthy, Raymond and Chatman retired and elected to take their benefits in the form of an annuity.  All of the retirements occurred between June 2000 and December 2002.

---

[3]None of these calculations was made using the method described to set the opening balance of the cash balance accounts.

In this lawsuit, filed May 21, 2009, the plaintiffs claim the Plan failed to give adequate notice of a plan amendment that significantly reduces the rate of future benefit accruals as required by the version of § 204(h) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1054(h), that was effective at the time of conversion (Count I, the "notice claim"). They also claim the SPD distributed with the notice provided a misleading and inaccurate description of certain Plan terms, in violation of the version of § 102 of ERISA, 29 U.S.C. § 1022, that was effective at the time of conversion (Count II, the "SPD claim"). The plaintiffs also claim the Plan committed a breach of contract when it assign an opening cash balance amount less than the actuarial present value of the prior plan balance (Count III, the "anti-cutback claim").[4] Alternatively to Counts I through III, the plaintiffs claim they are entitled to benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), that they did not receive in their retirement distributions as a result of the allegedly improper notice and opening cash balance account balance calculations (Count IV).

In addition, the plaintiffs claim the application of a higher discount rate to participants 45 years old and older, and the calculation of additional credits based on their wrongfully calculated opening balances, violated the prohibition on a cessation or reduction in the rate at which an employee accrues benefits on account of age as set forth in § 204(b)(1)(H)(i) of ERISA, 29 U.S.C.

---

[4]Although pled as a state law breach of contract claim, Count III is, in substance, identical to the claim pled as Count I in Mezyk's original complaint—a claim that the discount rate applied to them impermissibly exceeded the rate set forth in § 417(e)(3) of the Internal Revenue Code ("IRC"), 26 U.S.C. § 417(e)(3), and therefore violated the prohibition on decreasing a participant's accrued benefit by a plan amendment as set forth in § 204(g) of ERISA, 29 U.S.C. § 1054(g). It is so well-settled that ERISA preempts state law breach of ERISA plan contract claims seeking benefits under the plan that the Court need not go into a lengthy explanation of the preemption doctrine at this point. *See* ERISA § 514(a), 29 U.S.C. § 1144(a); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990).

§ 1054(b)(1)(H)(i) (Count V, the "age discrimination claim"). Finally, and alternatively to Count V, the plaintiffs claim they are entitled to benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), that they did not receive in their retirement distributions as a result of the allegedly improper conversion formula (Count VI).

With respect to Counts I, II and V, the plaintiffs seek relief consisting of a declaration that the challenged Plan provisions and practices are illegal and, with respect to Counts I and II, that the Plan amendments were void *ab initio*. With respect to Count III, they seek damages for breach of contract. For Counts I through III and Count V, they seek an order requiring reformation of the offending Plan provisions and practices, requiring recalculation of pension benefits in accordance with ERISA, and creating a common fund equal to the amount of those benefits. With respect to Counts IV and VI, the plaintiffs seek a judgment in the amount of the additional benefits due and the creation of a common fund equal to the amount of those benefits.

The plaintiffs asked the Court to certify this case as a class action and to define two classes as follows:

> **Class 1** (for Counts I through IV): All current and vested former U.S. Bank Pension Plan participants, and their beneficiaries, who accrued benefits prior to January 1, 1999, and who had active cash balance accounts on and after January 1, 1999.
>
> **Class 2** (for Counts V and VI): All current and vested former U.S. Bank Pension Plan participants age 45 and older as of January 1, 1999, and their beneficiaries, who accrued benefits prior to January 1, 1999, and who had active cash balance accounts on and after January 1, 1999.

U.S. Bank agrees that class certification is appropriate for Count III, the anti-cutback claim, and Count IV, the claim for benefits under the anti-cutback theory. It objects, however, to certification of Counts I and II, the notice and SPD claims, because it believes there are intra-class conflicts such that the named plaintiffs cannot serve as adequate class representatives. Some

participants, they argue, received a larger retirement benefit under the cash balance plan than they would have received under the prior plan and would not want to see the Plan amendments declared void *ab initio*. It also opposes certification of Count V, the age discrimination claim, and Count VI, the claim for benefits under the age discrimination theory, on the grounds that, should the plaintiffs prevail, they would actually receive a smaller retirement benefit than they did. They believe that application of the 8% discount rate along with early retirement subsidies and mortality assumptions actually yielded a higher opening cash balance account balance than application of the 7% discount rate without the subsidies and with different mortality assumptions.

      The Court approaches this case cognizant of the decision of the Court of Appeals for the Eighth Circuit in *Sunder v. U.S. Bancorp Pension Plan*, 586 F.3d 593 (8th Cir. 2009). In *Sunder*, Edward W. Sunder III and Louis R. Jarodsky, who were plaintiffs in this case and situated similarly in relevant respects to named plaintiffs Mezyk, Mulqueeny, Pellett and Williams, sued over the same Plan conversion at issue in this case. *Sunder*, 586 F.3d at 595. Sunder and Jarodsky brought an anti-cutback claim substantively identical to the one in the case at bar and an anti-discrimination claim based on the disparate impact of the time value of money, that is, that younger participants generally have more years for interest to accrue on their notional cash balances than older participants. *Id.* at 598. On appeal, the *Sunder* court rejected Sunder and Jarodsky's anti-cutback argument, holding that the discount rate the Plan used to calculate the opening balance of a participant's cash balance account was not excessive as long as the participant received at least the actuarial equivalent of his accrued benefit under the prior plan—calculated using the Internal Revenue Code § 417(e)(3) discount rate—when he or she received the final lump-sum distribution. *Id.* at 600-03. The *Sunder* court also found that Sunder and Jarodsky had waived an anti-discrimination argument based on the higher discount rates

applied on conversion to participants 45 years old and older by failing to raise it at the trial court level. *Id.* at 603.

**II.     Analysis**

A principal purpose of class certification is to save the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical manner. *See General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 155 (1982). The Court may certify a class if it satisfies all four provisions of Federal Rule of Civil Procedure 23(a), at least one provision of Rule 23(b) and the implied prerequisites that a class be ascertainable and that the class representatives be within the class. It is the moving party's burden to establish that each of the prerequisites of Rule 23 are satisfied. *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 161 (1982); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). A plaintiff's failure to satisfy any of the Rule 23 requirements precludes class certification. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993) (citing *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993)).

Generally, when ruling on a motion for class certification, the Court does not consider the merits of the case; rather, the Court focuses on whether the certification requirements are satisfied. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). "'[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'" *Id.* (quoting *Miller v. Mackey Int'l, Inc.*, 452 F.2d 424 (5th Cir. 1971)). Thus, the Court's role in the action currently under review is to "determine whether the plaintiff[s are] asserting a claim which, assuming its merits, would satisfy the requirements of Rule 23." *See* H. Newberg, 8 *Newberg on Class Actions*, § 24.13 (3d ed. 1992).

Nonetheless, the determination of a class certification motion may involve some consideration of the factual and legal issues that comprise the plaintiff's cause of action. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978). While the Court may not consider arguments directly on the merits, it may make a preliminary inquiry into the merits of the action when necessary to determine whether the requirements for class certification have been met. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676-77 (7th Cir. 2001). For example, it may take into account the substantive elements of a plaintiff's claims and the proof necessary to those elements so as to envision the form trial on those issues would take. *Elliott v. ITT Corp.,* 150 F.R.D. 569, 573 (N.D. Ill. 1992) (citing *Simer v. Rios*, 661 F.2d 655, 672 (7th Cir. 1981)).

The Court must rigorously assess whether the prerequisites have been met, *see Falcon*, 457 U.S. at 161, and, if the party seeking class certification meets each of them, the Court must certify the proposed class, *see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437 (2010) (noting "a categorical rule entitling a plaintiff whose suit meets the specified criteria [of Rule 23] to pursue his claim as a class action"); *Vickers v. Trainor*, 546 F.2d 739, 747 (7th Cir. 1976); *Fujishima v. Board of Educ.*, 460 F.2d 1355, 1360 (7th Cir. 1972). The Court has broad discretion to determine whether a proposed class satisfies the requirements, *Keele v. Wexler,* 149 F.3d 589, 592 (7th Cir. 1998); *Patterson v. General Motors Corp.*, 631 F.2d 476, 480 (7th Cir. 1980), and should err in favor of maintaining class actions, *King v. Kansas City S. Indus., Inc.*, 519 F.2d 20, 26 (7th Cir. 1975).

A.     <u>Implied Prerequisites</u>

Before the Court can address the issues raised by Rule 23, the moving party must satisfy two implied prerequisites of Rule 23. The first is that the class is sufficiently defined so as to be identifiable as a class. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *Simer v.*

*Rios*, 661 F.2d 655, 669 (7th Cir. 1981) ("It is axiomatic that for a class action to be certified a 'class' must exist."); *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977); *Duffin v. Excelon*, No. CIV A 06 C 1382, 2007 WL 845336 at *3 (N.D. Ill. Mar. 19, 2007). The second is that the named representative fall within the class. *Alliance to End Repression*, 565 F.2d at 977.

The plaintiffs propose one class of all Plan participants under the prior plan who also had cash balance accounts under the amended plan (Class 1) and another class, a subgroup of the first, who were 45 years old or older at the time of the Plan conversion (Class 2). The Court finds the classes are sufficiently identifiable as a class and are not overbroad. It will be a relatively simple matter to ascertain who is in the classes by reference to objective criteria contained within U.S. Bank's employment records. Furthermore, it is clear that the named representatives fall within the class definitions. Thus, the plaintiffs have satisfied the implied prerequisites to class certification.

    B.    <u>Rule 23(a)</u>

Rule 23(a) allows a plaintiff to sue on behalf of a class only if all four of the following elements are satisfied:

    (1)    the class is so numerous that joinder of all members is impracticable;

    (2)    there are questions of law or fact common to the class;

    (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

    1.    <u>Numerosity of Parties</u>

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members

is impracticable. Fed. R. Civ. P. 23(a)(1). When the class is large, numbers alone may be dispositive of numerosity. *See Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986). The defendants do not challenge the numerosity of the proposed classes. This action is brought on behalf of approximately 8,380 participants in the Plan who would be included in Class 1. The plaintiffs represent that there would be hundreds or thousands included in Class 2, and the defendants have not contested that estimate. It is clearly impracticable to join 8,380 participants, or even "hundreds or thousands" of individuals, in a single action, so the plaintiffs have satisfied the numerosity requirement.

    2.    <u>Commonality of Issues</u>

A named class representative may sue on behalf of the class only if there are questions of law or fact common to the class. This commonality requirement serves the dual purposes of (1) fair and adequate representation of the interests of absent class members and (2) practical and efficient case management. 5 James Wm. Moore *et al.*, *Moore's Federal Practice* ¶ 23.23 (3d ed. 1999). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Common nuclei of fact are typically manifest where the defendants have engaged in standardized conduct towards members of the proposed class. *Id.*; *see also Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 308 (N.D. Ill. 1995). Some factual variation in the details of individual claims does not defeat a finding of commonality. *Rosario*, 963 F.2d at 1017. Courts give Rule 23(a)(2) a "highly permissive reading," requiring plaintiffs to show only that there is more than one issue of law or fact in common. *See Markham v. White*, 171 F.R.D. 217, 222 (N.D. Ill. 1997); *Wagner v. NutraSweet Co.*, 170 F.R.D. 448, 451 (N.D. Ill. 1997). Though the commonality requirement is permissive, an

issue of law or fact is not "common" unless its resolution "will advance the litigation." *See Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). Standardized conduct with respect to the administration of a pension plan governed by ERISA can satisfy the commonality requirement. *See, e.g., Berger v. Xerox Corp. Ret. Income Guar. Plan*, 338 F.3d 755 (7th Cir. 2003) (class action to decide whether ERISA plan's methodology for calculating retirement benefits violated ERISA and the IRC).

There is clearly a common nucleus of operative facts and law at issue with respect to the putative classes. The Plan has engaged in a standardized course of conduct toward all members of the proposed classes by calculating the opening cash balance of each putative class member's account using the methodology set forth in the Plan. With respect to each calculation made under the same methodology, the legal issue is whether using this methodology complied with the anti-cutback and anti-discrimination provisions of ERISA. Further, the claims of putative class members share common issues of fact and law regarding whether the notice and SPD issued by the Plan complied with ERISA's requirements regarding the substance of those documents. Deciding these common issues of law and fact would be a fair, practical and efficient way to advance this litigation. For this reason, the Court finds that the highly permissive commonality requirement is met.

        3.     Typicality of Claims and Defenses

Whether the named plaintiffs' claims are typical of those of the class members they represent is closely related to the commonality inquiry, but problems with commonality often take on greater significance in the typicality context. *See Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("The question of typicality in Rule 23(a)(3) is closely related to the . . . question of commonality."). Subsection (a)(3) directs the Court to focus on whether the named

representatives' claims have the same essential characteristics as the claims of the class at large. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Id.*

Despite the apparent similarity, the commonality and typicality requirements serve different functions. The commonality requirement questions the relationship of the claims among the class itself, while the typicality requirement focuses on the relation between the representatives and the class as a whole. The Court should concentrate on the defendants' alleged conduct and the plaintiffs' legal theory to satisfy Rule 23(a)(3). *Rosario*, 963 F.2d at 1018. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. *De La Fuente*, 713 F.2d at 232. Thus, similar legal theories may control even in the face of different facts. *Id.* "Properly applied, these guidelines should uphold the rationale behind the typicality requirement, namely that 'a plaintiff with typical claims will pursue his or her own self-interest in the litigation and in so doing will advance the interests of the class members, which are aligned with . . . those of the representative.'" *Insolia v. Philip Morris Inc.*, 186 F.R.D. 535, 544 (W.D. Wis. 1998) (quoting 1 H. Newberg, *Newberg on Class Actions*, § 3.13 (3d ed. 1992)).

Notwithstanding U.S. Bank's concerns there might be an intra-class conflict, which is discussed in the following section, the plaintiffs' claims are typical of those belonging to the rest of the putative classes. They have the same essential characteristics of putative class members' claims in that all rely on the same legal theories—the Plan's compliance with ERISA's anti-cutback, anti-discrimination and notice provisions—and arise out of the same uniform course of conduct by the Plan—implementation of uniform Plan provisions and distribution of notice. The

Court is confident that in pursuing their own claims, the named plaintiffs will advance the interests of the putative class members. Thus, the plaintiffs' claims are typical of those of the proposed class.

4. Adequacy of Representation

Despite U.S. Bank's assertion of an intra-class conflict, the named plaintiffs are adequate representatives of the proposed classes. The adequacy of representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997). The proposed class representatives must at a minimum "possess the same interest and suffer the same injury as the class members." *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (internal quotations omitted); *accord Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). They must also not have any interests in conflict with those of other members of the class and must have a sufficient interest in the litigation to ensure vigorous advocacy. *Chandler v. Southwest Jeep-Eagle, Inc.,* 162 F.R.D. 302, 308 (N.D. Ill. 1995)) (internal quotation omitted); *see Spano v. The Boeing Co.*, Nos. 09-3001 & 09-3018, 2011 WL 183974, * 11 (7th Cir. Jan. 21, 2011).

With respect to Counts III and IV, there does not appear to be any antagonistic relationship between the named plaintiffs and the putative classes. Furthermore, in the absence of any hint that the named plaintiffs lack a sufficient interest in the outcome such that they will be vigorous class advocates, the Court finds the named class representatives will fairly and adequately protect the interests of the classes in their litigation of Counts III and IV.

With respect to Counts I and II, the notice and SPD claims, U.S. Bank argues that the named plaintiffs have interests antagonistic to some putative class members for whom it is not beneficial to void the Plan amendments. Indeed, the evidence cited in *Sunder* indicates it is

theoretically possible that, as a result of the generous credits and assumptions awarded to employees 45 years old and older during the transition, an employee might have had a cash balance as of January 1, 1999, that was higher than his accrued benefit under the prior traditional defined benefit plan as of December 31, 1998. The numbers presented in *Sunder* demonstrate that this is a possibility. An employee who retired while the cash balance account or its actuarial value was higher than his accrued benefit under the prior plan would not want to have the Plan amendments voided. Indeed, based on the evidence in *Sunder*, it appears Sunder and Jarodsky would have been in this position had they retired immediately after the transition. However, they did not. They waited until the benefit they would have continued accruing under the old plan (had it remained) exceeded the value of the benefit they actually accrued under the new plan, and *then* they retired. Thus, it is *conceivable* that a Plan participant with benefit accruals like Sunder's and Jarodsky's at the time of conversion would not want to void the cash balance plan amendments, but at the class certification hearing, U.S. Bank was unable to point to a single putative class member who is actually in this situation. It could not name a single person who received a retirement benefit under the amended Plan that was higher than he would have received had the pre-conversion Plan terms continued to be in effect. Thus, it was unable to substantiate any intra-class conflict.

      With respect to Counts V and VI, U.S. Bank suggests there is a conflict of interest because a victory for the plaintiffs would leave them worse off than they are now. In other words, it believes the named plaintiffs' desires are antagonistic to the interests of the putative class as a whole. U.S. Bank rests its argument on mistaken belief about what the plaintiffs seek in Counts V and VI. It believes the plaintiffs want the Plan to calculate the opening cash balance account balances of those 45 years old and older in the same manner that they calculated the opening

balances of those under 45 years old—with a 7% discount rate and without early retirement subsidies and more favorable mortality tables. According to U.S. Bank, this would inevitably lead to lower opening balances, which would not be in the interests of any putative class member, including the named plaintiffs. However, it appears that the plaintiffs seek much more than that. They don't want putative class members' opening balances calculated as if they were under 45 years old; they want a 7% discount rate *and early retirement subsidies and favorable mortality tables*. In essence, they want their opening balance calculated exactly the same way they were, except with a lower discount rate. If this is what the plaintiffs seek, their interests are not antagonistic to the putative class's interest.

Having found the plaintiffs can satisfy the requirements of Rule 23(a) with respect to certification of Class 1 for Counts I through IV and of Class 2 for Counts V and VI, the Court now turns to the requirements of Rule 23(b).

    C.    Rule 23(b)

If all of the elements of Rule 23(a) are met, the moving party must also show one of the elements outlined in Federal Rule of Civil Procedure 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Rule 23(b) states that a class action may be maintained only if one of three conditions is satisfied:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> > (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. . . .

Fed. R. Civ. P. 23(b). The plaintiffs request certification first under Rule 23(b)(1) and (2) and only alternatively under Rule 23(b)(3).

        1.     Rule 23(b)(1)

Rule 23(b)(1) is satisfied where separate actions by or against individual class members would risk establishing incompatible standards of conduct for the party opposing the class, *see* Fed. R. Civ. P. 23(b)(1)(A), or would as a practical matter be dispositive of the interests of nonparty class members or substantially impair or impede their ability to protect their interests, *see* Fed. R. Civ. P. 23(b)(1)(B). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Under Rule 23(b)(1), the Court can certify a mandatory class from which class members have no rights to opt out. *See* Fed. R. Civ. P. 23(c)(2). Certification under this provision is especially helpful in ERISA cases where a defendant provides unitary treatment to all members of a putative class and where litigation of some class members' rights could be implicated in suits brought by other class members. *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 396-97 (E.D. Pa. 2001).

Here, the plaintiffs seek broad declaratory and injunctive relief from the defendants. If the relief were granted with respect to some class members—that is, if the Court declares that certain Plan provisions violate ERISA and/or that the Plan is void *ab initio*—but not as to others, the defendants would likely be faced with the impossible task of administering the Plan and

distributing benefits under the Plan using multiple, inconsistent standards. Thus, class certification is appropriate for all counts under Rule 23(b)(1)(A) to establish one single standard of conduct for the defendants' administration of the Plan.

        2.      Rule 23(b)(2)

Rule 23(b)(2) is satisfied where a defendant's conduct or refusal to act was generally applicable to the class and where final injunctive or declaratory relief with respect to the entire class would be the appropriate remedy. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). "As a general matter, Rule 23(b)(2) is invoked in cases where injunctive or declaratory relief is the primary or exclusive relief sought." *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 335 (N.D. Ill. 1995). "Rule 23(b)(2) does not preclude monetary recovery when it is either part of the equitable relief granted or is secondary or ancillary to the predominant injunctive or declaratory relief sought." *Orlowski v. Dominick's Finer Foods, Inc.*, 172 F.R.D. 370, 374 (N.D. Ill. 1997) (internal quotations omitted). Therefore, "the primary limitation on the use of Rule 23(b)(2) is the requirement that injunctive or declaratory relief be the predominant remedy requested for the class members." *Doe v. Guardian Life Ins. Co.*, 145 F.R.D. 466, 477 (N.D. Ill. 1992).

Here, the defendants have acted or refused to act in a manner generally applicable to the class when they made certain uniform decisions about administering the Plan as it applies to the putative class members. The plaintiffs seek declaratory and injunctive relief for the entire class—a declaration that the entire Plan or certain Plan provisions violate ERISA, an injunction requiring the Plan to cease implementing those Plan provisions and reformation of the Plan, plus an injunction requiring recalculation and payment of benefits under the proper calculations. It is true that if such relief were awarded, class members may receive monetary benefits that would

naturally flow from the award of declaratory or injunctive relief. However, that does not detract from the fact that the relief sought is predominantly declaratory or injunctive in nature. Accordingly, class certification is appropriate for all counts under Rule 23(b)(2).

Because the plaintiffs have satisfied all four provisions of Rule 23(a), two provisions of Rule 23(b) and the implied prerequisites to class certification with respect to all counts, the Court will certify the two requested plaintiff classes.[5] Class certification may ultimately benefit U.S. Bank by allowing uniform, definitive answers to those and other questions raised in this litigation without the costs of defending multiple lawsuits.

D. Class Definition

Despite the foregoing, there remains a problem with the proposed class definitions. Plaintiffs Sunder, Jarodsky and putative class member Eileen Chamberlain have unsuccessfully challenged the Plan's conversion to a cash balance account plan in prior litigation. Their claims were disposed of with prejudice, and the doctrine of *res judicata* prevents them from participating in the challenges raised in this case because they could have raised those challenges in their prior cases. *Cole v. Board of Trs. of Univ. of Ill.*, 497 F.3d 770, 772 (7th Cir. 2007); *Garcia v. Village of Mt. Prospect*, 360 F.3d 630, 634 n. 6 (7th Cir. 2004). Indeed, the Court has already disposed of Sunder's and Jarodsky's claims in this case on that very basis. Therefore, Sunder, Jarodsky and Chamberlain cannot be members of the classes certified in this case.

Furthermore, the proposed class definitions do not contain common exclusions for those connected with this litigation. For these reasons, the Court will add the following exclusions to the

---

[5]If the Court allows the plaintiffs to amend their complaint to change existing claims and add new claims, it will then take up the question of whether subclasses should be certified. However, as the complaint stands at the moment, the classes certified are appropriate.

proposed class definitions:

> *Excluded* from the Class 1 and Class 2 are Edward W. Sunder III; Louis R. Jarodsky; Eileen Chamberlain; Defendants' legal counsel (including members of Defendants' legal department); and any judge assigned to this case and any member of such judge's immediate family.

The Court now turns to the issue of appointment of class counsel.

### E. Appointment of Class Counsel

Under Rule 23(g)(1), if the Court certifies a class, it must appoint class counsel to fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(4). In naming class counsel, the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). It may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(b)(1)(B).

Matthew H. Armstrong, of the Armstrong Law Firm LLC, and David L. Steelman, of the firm Steelman, Gaunt & Horsefield, seek appointment as class counsel in this case. U.S. Bank does not object to their appointment, and the materials submitted in support of their appointment show they are well-qualified to represent the plaintiff classes in this case. Attorney's fees will constitute a percentage of the class recovery, if any, in this case. *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718-19 (7th Cir. 2001).

### III.    Conclusion

For the foregoing reasons, the Court:

- **GRANTS** the plaintiffs' motion for class certification (Doc. 68);

- **CERTIFIES** the following classes:

    **Class 1** (for Counts I, II, III and IV):  All current and vested former U.S. Bank Pension Plan participants, and their beneficiaries, who accrued benefits prior to January 1, 1999, and who had active cash balance accounts on and after January 1, 1999; and

    **Class 2** (for Counts V and VI):  All current and vested former U.S. Bank Pension Plan participants age 45 and older as of January 1, 1999, and their beneficiaries, who accrued benefits prior to January 1, 1999, and who had active cash balance accounts on and after January 1, 1999.

    *Excluded* from the Class 1 and Class 2 are Edward W. Sunder III; Louis R. Jarodsky; Eileen Chamberlain; Defendants' legal counsel (including members of Defendants' legal department); and any judge assigned to this case and any member of such judge's immediate family.

- **APPOINTS** plaintiffs Joseph J. Mezyk, Mary P. Mulqueeny, Doris L. Carthy, Peggy B. Raymond, Shirley Chatman, Thomas L. Pellett and Richard A. Williams as representatives of both classes; and

- **APPOINTS** Matthew H. Armstrong, of the Armstrong Law Firm LLC, and David L. Steelman, of the firm Steelman, Gaunt & Horsefield, as class counsel.

**IT IS SO ORDERED.**
**DATED:  February 11, 2011**

> s/ J. Phil Gilbert
> **J. PHIL GILBERT**
> **DISTRICT JUDGE**