## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH J. MEZYK, et al., individually, and on behalf of all those similarly situated, | |
| Plaintiffs, | Case No. 3:09-cv-384-JPG-DGW |
| vs. | |
| U.S. BANK PENSION PLAN and U.S. BANCORP, INC., | |
| Defendants. | Consolidated with: |
| THOMAS L. PELLETT, et al., individually, and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 3:10-cv-696-JPG-DGW |
| vs. | |
| U.S. BANK PENSION PLAN, | |
| Defendant. | |

## ORDER AWARDING ATTORNEYS' FEES,
## EXPENSES, AND INCENTIVE PAYMENT FOR PLAINTIFFS

Before the Court are the motions of Class Counsel for fees, expenses, and award to named plaintiffs (Docs. 150 & 151) arising out of the class action settlement which was given Final Approval on November 2, 2012. The motions (Docs. 150 & 151) are **GRANTED**. The Settlement Agreement provides for Class Counsel's attorney fees, expenses, and awards to be paid out of the common fund created by the Settlement Agreement.

### I.      Attorney's Fees

The Seventh Circuit has held that attorney fees based on the "common fund doctrine" are appropriate in ERISA cases. *See Florin v. Nationsbank of Ga. N.A.*, 34 F.3d 560, 563 (7th Cir.

1994). Under the common fund doctrine, Class Counsel who obtains a settlement or judgment that creates a commonly held fund for the benefit of the class is entitled to a reasonable fee from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

The Settlement Agreement provides for payment of Class Counsel's attorney fees and litigation costs up to $2,640,000.00 and $200,000.00, respectively. Class Counsel is seeking the maximum attorney fees allowable of $2,640,000.00, and litigation costs award of $200,000.00. The fee request equates to 27½% of the gross cash settlement common fund of $9,600,000.00; and, this 27½% amount is the less than the 33⅓% basis provided in the contingency-fee contract Class Counsel entered into with the individual plaintiffs. Ultimately, the Court must determine the rate for Class Counsel's services by "estimat[ing] the terms of the contract that private plaintiffs would have negotiated with their lawyers had bargaining occurred at the outset of the case (that is when the risk of loss still existed)." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*"). In that regard, the Court notes the inherent difference in negotiating a contingency-fee contract with a single plaintiff and negotiating a contingency-fee contract with a plaintiff class where the anticipated recovery will differ substantially.

In determining whether to grant a fee petition in a class action settlement, the Seventh Circuit requires the Court to determine whether the fee requested is within the range of fees that would have been agreed to at the outset of the litigation in an arm's-length negotiation in light of the risk of nonpayment and the normal rate of compensation in the market at the time. *See Synthroid I*, 264 F.3d at 719-22.

Courts in common fraud cases have discretion to choose either the lodestar or percentage method of calculating fees. *Florin*, 34 F.3d at 566. Having noted advantages and disadvantages to both approaches, the Seventh Circuit has opted to make the market the controlling

consideration.  The Court is less concerned with the choice between the lodestar or percentage method than with approaching the determination through the lens of the market.  Consequently, "[w]hen the prevailing method of compensating lawyers for similar services is the contingent-fee, then the contingent fee *is* the 'market' rate."  *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) (internal quotations omitted; emphasis in original).  As observed by the Seventh Circuit in *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998), "When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund, in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis."  (internal citations omitted).

In determining the "market rate," the Court is required to look at factors such as: (1) actual fee contracts that were previously negotiated for similar litigation; (2) information from other cases; and (3) the amount of legal work involved, the risks of non-payment and the quality of legal services rendered.  *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011), *cert. denied*, 132 S. Ct. 1911 (2012);  *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599-600 (7th Cir. 2005);  *Synthroid I*, 264 F.3d at 721.

### A.  Actual Fee Contracts

As previously discussed, each plaintiff has signed a contingency-fee contract with Class Counsel calling for a one-third (33⅓%) fee plus costs.  Considering the paucity of successful cases challenging cash balance pension plans and administrators for alleged ERISA violations, it would be unrealistic to believe that any lawyer would undertake such a case on other than a contingency-fee basis.

### B.  Information from Other Cases

As noted by the district court in *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374,

1995 WL 17009594, at *8 (N.D. Ill. Oct. 10, 1995), courts in the Seventh Circuit commonly award attorney fees "equal to approximately one-third or more of the recovery." The Seventh Circuit itself has specifically noted, "The typical contingent fee is between 33 and 40 percent." *Gaskill*, 160 F.3d at 362 (upholding the award of 38% of a $20 million settlement); *see, e.g., Williams*, 658 F.3d at 636 (affirming district court finding that the market rate for ERISA class action attorney's fees is a contingency fee between 25% and 33%); *Will v. General Dynamics Corp.*, No. 06-cv-698-GPM, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) (noting in an ERISA class action that "the market for complex plaintiffs' attorney work in this case and similar cases is a contingency fee" and that "a one-third fee is consistent with the market rate."). Independent studies of class action litigation nationwide are consistent with the attorney's fee requested in this case. *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Studies 811, 835, 839 (2010) (finding that for employee benefits class actions settled in 2006-2007, the mean fee award was 26% and the median fee award was 28%; finding that for cases with recovery ranges of the one at issue in this case, the mean fee award in 2006-07 was 26.4% and the median fee award was 28%).

    C.  <u>The Legal Services Rendered</u>

Given the complexity of this litigation, it took highly qualified attorneys performing at a high quality level to achieve the results obtained in this case – the $9.6 million settlement, which virtually stands alone in this type of litigation. In this case, Class Counsel was able to go head-to-head with one of the largest banks in the United States and its formidable counsel because Class Counsel had the expertise and the finances to risk the expense of lengthy litigation involving thousands of hours of uncompensated legal work and substantial out-of-pocket costs for experts and other litigation expenses.

Class Counsel argues that where the market for legal services in a class action is only for contingency-fee agreements and there is substantial risk of nonpayment for the attorneys, "the normal rate of compensation in the market is 33⅓% of the common fund recovered," citing *In re Ready-Mixed Concrete Antitrust Litigation*, No. 05-0097 (S.D. Ind. Mar. 31, 2009), Doc. 151 at 13. However, the Court must temper this statement with the realization that the one-third contingency-fee contracts negotiated between Class Counsel and the individual plaintiffs are probably not reflective of what would likely be hypothetically charged in a class action specifically if negotiated with the entire class. *See In re Trans Union Corp. Privacy Litig.*, No. 00 C 4729, 2009 WL 4799954, at *11 (N.D. Ill. Dec. 9, 2009). Class Counsel's experience and empirical studies suggest "that counsel competing in the market are willing to accept class action representations on a downward sliding fee basis." *Ready-Mixed Concrete Antitrust Litig.*, at 14. The Seventh Circuit ultimately awarded fees to consumer Class Counsel on a downward sliding scale in *In re Synthroid Marketing Litigation*, 325 F.3d 974 (7th Cir. 2003) (awarding Class Counsel 30% of the first $10 million in class recovery, 25% of the next $10 million, 20% of the next $26 million, and 15% of all amounts over $46 million up the $88 million recovery). Here, Class Counsel seeks only 27½% of the common fund which is significantly downward of the 33⅓% market rate.

In consideration of the total value of the Settlement Agreement, the Court considers the requested fee of $2.64 million to be reasonable and reflective of the fee that would have been agreed to at the outset of the litigation in an arm's length negotiation in light of the risks of the litigation and the market rate.

Although there are no objections to the settlement in general or the fee request in particular, the Court acknowledges the novelty of the settlement obtained by Class Counsel and

the great risk of nonpayment by such an undertaking, including the responsibility to pay the opposing party's allowable costs if unsuccessful.  Evidence at the fairness hearing showed that this type of ERISA litigation required extensive and particularized skill, not only in litigating a complex national class action, but also navigating ERISA and the Department of Labor's voluminous regulations, comments, and advisory opinions relevant to the case. The litigation also required extensive investment of money, including the retention of expert witnesses, the review of extensive discovery, and in the investment of thousands of attorney hours in litigating the case over a period of more than five years, beginning well before the case was filed, during which time Class Counsel was not paid any compensation for their services to the class.

## II.    Costs and Expenses

It is well established that counsel who creates a common fund like this one are entitled to the reimbursement of reasonable litigation costs and expenses.  FED. R. CIV. P. 23(h).  The expenses that may be reimbursed from the common fund encompasses "all reasonable" litigation-related expenses.  *See International Imp. Fund Trustees v. Greenough*, 105 U.S. 527, 533 (1882).  Litigating complex contingent cases such as this one requires counsel to incur expenses; Class Counsel have advanced $229,588.97, and they are entitled to reimbursement of those expenses.  The contingency-fee contract with the plaintiffs provides for the reimbursement of such costs as well.  *See Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) (attorneys entitled to reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the clients' representation.). Class Counsel, proceeding on a contingent-fee basis with a high risk of no recovery, had a strong incentive to keep expenses at a reasonable level and have assured the Court that expenses incurred were all necessary to the resolution of this case, either directly or indirectly.  The Court

has no reason to doubt the reasonableness of the costs for which Class Counsel requests reimbursement. Those costs are largely attributable to ordinary and necessary costs such as court reporters, expert fees, document organization, travel, and copying. *See In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992).

In consideration of the total expenses, the Court considers the requested reimbursement of $200,000.00 to be reasonable.

### III.   Named Plaintiffs' Incentive Awards

"Incentive awards are justified when necessary to induce individuals to become named representatives." *Synthroid I*, 264 F.3d at 722. "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

In this case, the named plaintiffs have been active, hands-on participants in the litigation, expending significant amounts of their own time to benefit the class. Class Counsel report that they all assisted with discovery, produced critical documents, sat for deposition, and were involved in settlement. The total award for all seven named plaintiffs represents just 0.36% of the total common fund. An award of $5,000.00 for each plaintiff is well within the ranges that are typically awarded in comparable cases. *See, e.g., In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 376-77 (S.D. Ohio 1990) (awarding $215,000 or 1.19% of the settlement fund to the named plaintiffs).

In consideration of their efforts, the Court considers the seven requested incentive awards of $5,000.00 each to be reasonable.

**IV.     Conclusion**

For all the foregoing reasons, the Court awards attorneys' fees in the amount of $2,640,000.00 to Co-Class Counsel David L. Steelman and Matthew H. Armstrong; costs reimbursement of $200,000.00; and incentive awards of $5,000.00 to each of the seven Class Representatives, Joseph J. Mezyk, Mary P. Mulqueeny, Doris L. Carthy, Peggy B. Raymond, Shirley Chatman, Thomas L. Pellett, and Richard A. Williams.

The awarded attorneys' fees, expenses, and incentive awards shall be paid from the settlement fund immediately after the date of this Order subject to the terms, conditions, and obligations of the Settlement Agreement § 7.2.7, which provides for wire transfer of said funds, and is subject to all terms, conditions, and obligations of the Settlement Agreement, which terms, conditions, and obligations are incorporated herein.

**IT IS SO ORDERED.**

s/J. Phil Gilbert
**Hon. J. Phil Gilbert**
**United States District Judge**

**Dated this 5th day of November, 2012.**